THRIVENT FINANCIAL FOR LUTHERANS,

        Plaintiff,

      v.                                  Case No. 16-C-1321

SIGNE WARPNESS,
KURT BATCHELDER, and
ERIK BATCHELDER,

        Defendants.

## DECISION AND ORDER FOR DEPOSIT OF FUNDS AND ATTORNEYS FEES

Plaintiff/Stakeholder Thrivent Financial for Lutherans ("Thrivent") filed this interpleader action against decedent Stephan Batchelder's ex-wife and two sons due to their conflicting claims for the proceeds of a life insurance policy ("Policy") Thrivent issued to the decedent. Thrivent is a fraternal benefit society organized under the laws of the State of Wisconsin with its principal place of business in Appleton, Wisconsin. The decedent's ex-wife, Signe Warpness, is a citizen of the State of Colorado. His sons, Kurt and Erik Batchelder, are citizens of the State of Florida, and the proceeds of the policy exceed $500. Thus, this court has jurisdiction under 28 U.S.C. § 1335.

The case is before the court on Thrivent's motion to deposit with the court the proceeds of the policy, which with interest amounted to $194,649.02 at the time the motion was filed, and for payment of its own attorneys fees and costs in the amount of $10,491.20. Defendants, referred to herein by their first names in order to avoid confusion, argue that the fees and costs requested by Thrivent are unreasonably high. For the reasons stated herein, Thrivent's motion will be granted in part.

**BACKGROUND**

Thrivent issued a life insurance policy to Stephan Batchelder on May 8, 1984, with a face amount of $184,080.56. Compl., ECF No. 1, at ¶ 8. Currently, the accrued interest is $10,568.46, making the total admitted liability $194,649.02, which will continue to accrue interest until it is paid. *Id.* at ¶ 8; ECF No. 16 at ¶ 2. Stephan designated Signe Batchelder (now Signe Warpness) as the primary beneficiary, and designated the "children of the Insured" as contingent beneficiaries. Compl. at ¶¶ 9–10. Stephan and Signe divorced in 1997 and entered into a Separation Agreement which contained two provisions bearing on his obligation to maintain life insurance. First, the Separation Agreement required Stephan to maintain $100,000 of life insurance payable to Signe as long as he was under any obligation to pay alimony to her. Except for the event of death, alimony payments were to continue until her remarriage, death, or at such time as she attained the age of eligibility for benefits under the share of his retirement plans that she received in the divorce. A second provision required Stephan to maintain $84,000 of insurance on his life naming the wife, Signe, as trustee for the benefit of the children. The provision stated that the wife as trustee shall be the sole beneficiary until the youngest child attains the age of twenty-three. Stephan died on June 11, 2015, in Suzhou, China. Compl. at ¶ 14.

In a letter sent to Thrivent on September 5, 2015, Signe claimed to be a beneficiary to the Policy. *Id.* at ¶ 15. At the time of his death, however, Stephan's home address was in Florida. Florida law statutorily voids a decedent's beneficiary designations of former spouses for life insurance policies subject to certain prescribed exceptions. Fla. Stat. § 732.703(2). In addition, Stephan had remarried after the divorce, and at the time of his death, he was married to a Chinese national. Finally, his adult sons Kurt and Erik, both in their mid-thirties, were contingent

beneficiaries under the terms of the policy and the intended beneficiaries under the Separation

Agreement.  Under these circumstances, Thrivent could not determine who was entitled to receive

the proceeds.

Thrivent retained counsel to assist it in making that determination and, if necessary,

commencing an interpleader action.  *Id.* at ¶ 18.  Prior to filing, Thrivent was able to locate

decedent's Chinese widow and obtain from her a disavowal of any claim on her behalf.  Thrivent

also attempted to assist the parties in resolving the matter.  Since the filing of this claim, Signe

persists in her claim to all of the proceeds, now supported by her son Kurt.  Erik contends that the

beneficiary designation of Signe is void and claims he is entitled to half of the Policy proceeds, with

the balance owed to his brother. ECF No. 34 at 3–4; ECF No. 22 at 1.  In any event, due to the

conflicting claims of the potential beneficiaries, Thrivent's inability to determine who is lawfully

entitled to the proceeds of the Policy, and Thrivent's consequent vulnerability to lawsuits arising

from the vexatious claims to the Policy, Thrivent seeks interpleader relief.  Compl. at ¶¶ 21–22.

Thrivent requests that the court accept for deposit the policy proceeds, discharge Thrivent from

liability, and award Thrivent attorney's fees and costs.  *Id*. at 6–7.


**ANALYSIS**

Not surprisingly, Defendants do not oppose Thrivent's request to deposit the proceeds of the

policy with interest with the court, and that part of Thrivent's motion will be granted as a matter of

course.  Defendants do challenge, however, Thrivent's request for attorney's fees.  Defendants

contend that Thrivent should only recover attorney's fees and costs incurred in initiating and

litigating the interpleader action, but not for expenses that predate this action, such as "tracking

down possible claimants in China and attempting to negotiate a settlement." Erik Br. in Opp'n, ECF No. 21, at 1; Signe Br. in opp'n, ECF No. 26, at 1; Kurt Br. in Opp'n, ECF No. 27, at 2.

Generally, courts award attorney's fees from the deposited fund when (1) the party seeking fees is a disinterested stakeholder; (2) the party concedes liability for the funds; (3) the party deposited the funds into the court; and (4) the party sought discharge from liability. *Hartford Life & Acc. Ins. Co. v. Sabol*, No. 09-C-45, 2010 WL 519725, at *3 (E.D. Wis. Feb. 9, 2010); *see also Law Offices of Beryl A. Birndorf v. Joffe*, 930 F.2d 25, 25 (7th Cir. 1991). Courts have broad discretion in determining whether to award attorney's fees in an interpleader action, and if awarded, the amount. *Lutheran Brotherhood v. Comyne*, 216 F. Supp. 2d 859 (E.D. Wis. 2002) (citation omitted). In the Seventh Circuit, a court may award attorney's fees and costs "to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable and the stakeholder's efforts are not part of its normal course of business." *Aaron v. Mahl*, 550 F.3d 659, 667 (7th Cir. 2008) (citing *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 493 F.2d 76, 79 (7th Cir. 1974); *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965)).

In this case, Thrivent seeks expenses incurred both while attempting to identify and locate the individuals with a potential interest in the Policy's proceeds, facilitating settlement negotiations amongst the claimants, and filing the interpleader action. Defendants contend that these efforts are a part of Thrivent's normal course of business. Indeed, some courts have denied an insurance company's request for attorney's fees and costs related to bringing an interpleader action, reasoning that filing for interpleader relief is part of the company's ordinary course of business. *See, e.g.*, *Midland National Life Insurance Co. v. Ingersoll*, No. 13–C–1081, 2014 WL 7240268 (E.D. Wis. Dec. 18, 2014) (denying an insurance company attorney's fees incurred in pursuit of interpleader

4

relief because such companies should expect to file interpleader complaints on occasion); *Music Group, Ltd. v. Chrysalis Records, Inc.*, 552 F. Supp. 44 (D.C.N.Y. 1982) ("[I]n cases in which the claims are of the type that arise in the ordinary course of business, fees should not be granted perfunctorily; such is a cost of doing business that should not be transferred by invoking interpleader."); *Western Life Ins. Co. v. Nanney*, 290 F. Supp. 687 (D.C. Tenn. 1968).

But is hiring a law firm and commencing a legal action to determine the rightful beneficiary of a life insurance policy part of the ordinary course of business for a life insurance company? A life insurance policy is a relatively simple contract between the insurer and the insured. In return for payment of a premium, the insurer agrees to pay the benefits of the policy to the beneficiary designated by the insured upon the insured's death. It is only when the insured has failed to make clear to the insurer who is to receive the proceeds of the policy at his death that the insurer must hire a lawyer and start a lawsuit to get the answer. For the vast majority of policies issued by an insurer, such steps are not necessary. It is only when its insured fails to make clear his intentions when significant changes in his life inevitably occur that an insurer is forced to incur the additional expense of hiring a lawyer in order to meet its obligations under the contract. While interpleader actions are not uncommon, they are the exception and are hardly an ordinary part of the business of life insurance companies. More importantly, they are only needed when the insured fails to clearly designate a beneficiary.

This is a significant fact to consider in deciding who should bear the costs of instituting such an action. Even an apparently simple interpleader action can be time-consuming and costly to research and file, often for reasons beyond the insurance company's control. Daniel E. Witte, *Managing Irresponsible Actors in Federal Interpleader Actions*, 50 TORT TRIAL & INS. PRAC. L.J.

1, 42 (Fall 2014). For instance, when an insured is careless and fails to clarify his beneficiary designations after a divorce or remarriage, or as in this case, enters into a divorce settlement agreement that is vague and indefinite, the insurer is tasked with identifying and providing notice to the necessary individuals who may have a claim under the policy. The task is further complicated when, as here, one of the potential claimants is a citizen of a foreign country such as China. Awarding the insured fees and expenses out of the policy proceeds in such cases not only places the loss on the party responsible for the confusion (or more accurately those standing in the shoes of the person responsible), but it also incentivizes insureds to make their beneficiary designations clear and update them when significant changes in their lives call them into question. Such a rule also incentivizes the insurer to inquire into the legitimacy of the potential claims, protect the integrity of the fund, and act in a timely fashion. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1719; *see also John Deere Deferred Savings Plan For Wage Employees v. Propst*, No. 06-C-1235, 2007 WL 4594681, at *10 (E.D. Wis. Dec. 28, 2007) ("[W]hen it is revealed that there is likely going to be a substantive dispute between prospective beneficiaries so as to raise the prospect of the need for an interpleader action, additional research into the facts to prepare a complaint and file an action will be necessary and should be recoverable.").

Therefore, in determining whether to award attorney's fees in this case, the court will consider the purpose of interpleader actions as well as other equitable concerns, including "(1) whether the case is simple or involved; (2) whether the stakeholder performed unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly

6

protracted the proceedings." Witte, *supra*, at 41 (quoting *Prudential Prop. & Cas. Co. v. Baton Rouge Bank & Tr. Co.*, 537 F. Supp. 1147, 1150 n.2 (M.D. Ga. 1982)).

Here, Thrivent appears to have attempted to secure a just, speedy, and inexpensive determination that directly benefitted the defendants. While Defendants argue that Thrivent's fees are excessive, this case was not the typical, run-of-the-mill policy disbursement process. Stephan's ex-wife remained the named beneficiary of the Policy, even though he lived in a state that treated such designations as void after a divorce, his sons who were the intended beneficiaries when they were children had become adults, and he had remarried a Chinese national. Faced with this situation, Thrivent attempted to and successfully located all of the Policy's potential claimants. Thrivent was immediately aware of the claims asserted by Signe and Erik under the Policy. But it was also required to locate and contact Stephan's current wife, a Chinese national, to determine whether she intended to make a claim. In the meantime, Thrivent's counsel researched the process for serving Stephan's widow through the Hague Convention in the event it would be required to do so if she was named as a defendant in the interpleader action. Although she ultimately decided she would not make a claim under the Policy, Thrivent's investigation and research directly benefitted the defendants by narrowing the class of potential claimants.

At the same time, the total amount sought by Thrivent is significantly more than the costs attributable to the interpleader action by itself. It appears from the billing records submitted in support of its request that its attorneys spent a significant amount of time fielding telephone calls from Signe and trying to effect settlement among the parties over the proceeds and later with counsel over the issue of its fees. It is questionable whether all parties would not have been better off if counsel had simply filed the interpleader action immediately after it located the various

7

potential claimants instead of pursuing settlement. Taking all of these matters into consideration, I conclude that attorneys fees and costs totaling $5,245, or roughly one half of the amount sought by Thrivent, is reasonable. This amount, while more than in most interpleader actions, takes into consideration the unusual circumstances Thrivent faced in trying to perform its contractual obligations in this case.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Thrivent's motion to deposit a sum of money with the court and for interpleader relief, and petition for attorney's fees and costs is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**IT IS FURTHER ORDERED** that Thrivent shall retain $5,245.00 as reimbursement of reasonable attorney's fees and costs incurred in this matter and deposit the balance of the proceeds of the policy, with any additional accrued interest, into the registry of the court to be invested in the name of the Clerk of the Court "under order of the United States District Court for the Eastern district of Wisconsin, Case No. 16-CV-01321." The funds invested shall remain on deposit until further order of this Court.

**IT IS FURTHER ORDERED** that upon payment and deposit of the sums of money set forth in this Order, Thrivent, together with all parent, subsidiary or affiliated companies shall be discharged from any and all liability to any and all persons or entities asserting claims arising under the Policy.

**IT IS FURTHER ORDERED** that Defendants are hereby permanently restricted and enjoined from instituting any action against Thrivent or any of its parent, subsidiary or affiliated companies for payment under the Policy.

**IT IS FURTHER ORDERED** that upon payment and deposit of the sums of money pursuant to this Order, Thrivent thereby surrenders any claim of interest and said sums and shall be dismissed from this matter with prejudice.

Dated this   27th   day of June, 2017.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court