UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THRIVENT FINANCIAL FOR LUTHERANS,

        Plaintiff,

v.                                    Case No. 16-CV-1321

SIGNE WARPNESS,
KURT BATCHELDER, and
ERIK BATCHELDER,

        Defendants.

## DECISION AND ORDER

Plaintiff/Stakeholder Thrivent Financial for Lutherans ("Thrivent") filed this interpleader action naming decedent Stephan Batchelder's ex-wife and two sons as defendants due to their conflicting claims for the proceeds due under a life insurance policy issued by Thrivent. Thrivent is a fraternal benefit society organized under the laws of the State of Wisconsin with its principal place of business in Appleton, Wisconsin. The decedent's ex-wife, Signe Warpness, is a citizen of the State of Colorado. His sons, Kurt and Erik Batchelder, are citizens of the State of Florida, and the proceeds of the policy exceed $500. Thus, this court has jurisdiction under 28 U.S.C. § 1335. *See Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F. Supp. 2d 292, 301 (S.D. N.Y. 2012) ("Pursuant to this section, the district court has original jurisdiction over statutory interpleader cases where '[t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled' to money or property worth at least $500. Only minimal diversity—that is, diversity of citizenship between at least two claimants—is necessary.").

Presently before the Court are the defendants' cross-motions for summary judgment on their claims against the Policy. Specifically, both Signe Warpness and Kurt Batchelder seek summary judgment rulings that Warpness is the sole beneficiary of the Policy, while Erik Batchelder seeks a ruling that the proceeds are to be divided evenly between himself and his brother. To avoid confusion, the Court will refer to the parties by their first names. For the reasons stated herein, Erik's motion is denied and Signe's and Kurt's motions for summary judgment are granted.

## BACKGROUND

On May 8, 1984, Thrivent issued the life insurance policy that is the subject of this action to Stephan Batchelder. Stephan died on June 11, 2015, in Suzhou, China. Compl., ECF No. 1, at ¶ 14. At the time of Stephan's death, the policy had a face value of $184,000. *Id.* at ¶ 8. The total death benefit under the policy is $184,080.56, plus accrued interest in the amount of $10,568.46 as of March 24, 2017, all of which, less the amount awarded to Thrivent for its attorney's fees and costs, has been deposited with the Court. Stephan originally designated his then wife, Signe Batchelder (now Signe Warpness), as the primary beneficiary, and designated the "children of the Insured" as contingent beneficiaries. Kurt and Erik Batchelder are Stephan and Signe's only children. Erik Batchelder's Stmt. of Facts ("SOF"), ECF No. 23, at ¶ 4. Stephan never changed his beneficiary designations after they were first recorded at the issuance of the Policy. *Id.* at ¶ 8.

Stephan and Signe divorced in 1997 while living in Massachusetts. At that time, they entered into a Separation Agreement that was incorporated into the final judgment of divorce. Separation Agreement, ECF No. 25, at 8. The Separation Agreement contained two provisions bearing on Stephan's obligation to maintain life insurance. First, the Separation Agreement required Stephan

2

to maintain $84,000 of insurance on his life naming the wife, Signe, as trustee for the benefit of the children. The provision stated that the wife as trustee shall be the sole beneficiary until the youngest child attains the age of 23. *Id.* at 9–10.

A second provision of the Separation Agreement required Stephan to maintain $100,000 of life insurance payable to Signe as long as he was under any obligation to pay her alimony. Stephan was required to pay Signe alimony in the amount $500 twice a month, which obligation would terminate upon Signe's death or remarriage, or upon her attaining the age of eligibility for Stephan's Solutia SIP (Saving Investment Plan) and pension plan, portions of which Signe was awarded under the Separation Agreement. *Id.* at 8.

At the time of his death, Stephan was a resident of Florida. Florida law statutorily voids a decedent's beneficiary designation of a former spouse for life insurance policies and other instruments subject to certain prescribed exceptions. Fla. Stat. § 732.703(2). Also at the time of Stephan's death, both Erik and Kurt were in their mid-thirties, and although Signe had cashed out the shares of Stephan's retirement plans that she received shortly after the divorce, Stephan was still paying her the alimony called for by the agreement. In addition, Stephan had remarried after the divorce, though his second wife has since waived any claim she may have had in the proceeds. Faced with the conflicting claims, Thrivent commenced this interpleader action and moved to deposit the proceeds with the court, less its fees and costs, and for dismissal of any claims against it. Having granted Thrivent's motion, the Court will now proceed to the merits of the case.

**LEGAL STANDARD**

Summary judgment is appropriate when a moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact when the parties agree to all the facts. *See Carter v. Buscher*, 973 F.2d 1328, 1331 (7th Cir. 1992). Proposed findings of fact that go uncontroverted will be admitted and treated as agreed upon by all parties for the purpose of deciding summary judgment. *See* Civil L. R. 56(b)(4) ("The Court will deem unconvtroverted statements of material fact admitted solely for the purpose of deciding summary judgment."); *see also* Fed. R. Civ. P. 56(e)(3).

**ANALYSIS**

Erik claims that, as contingent beneficiaries of the Policy, the proceeds should be divided equally between himself and his brother. Conversely, Kurt and Signe contend that, as the Policy's sole beneficiary, Signe is entitled to the all of its proceeds.

On its face, the Policy provides that the proceeds should be paid to Signe. She is listed as the sole beneficiary, with Erik and Kurt listed as contingent beneficiaries. Contingent beneficiaries are not entitled to the proceeds unless the primary beneficiary has predeceased the insured or is barred from receiving the proceeds for some other reason. Erik argues that Stephan's designation of Signe as primary beneficiary is void under Florida law by virtue of her divorce from Stephan. Pointing to the Separation Agreement, Erik contends that he and Kurt were the intended beneficiaries of at least $84,000 of the proceeds, and since they are both over 23 years of age, this amount should be paid to them directly. As for the balance of the proceeds, Erik argues that

4

Stephan's obligation to pay Signe alimony under the Separation Agreement terminated when Signe cashed out her interest in his SIP and pension plans shortly after the divorce, or at the latest, when she turned 59½, the age at which benefits were payable under Stephan's SIP. Since Signe was 62 years of age at the time of Stephan's death, Erik argues Stephan was no longer obligated to pay alimony under the Separation Agreement, and thus the requirement that he maintain $100,000 of life insurance payable to Signe had lapsed. Given the fact that Stephan was no longer required to name Signe as beneficiary of the policy under the Separation Agreement, Erik argues that Florida law compels the conclusion that the designation of Signe as beneficiary is void and must be disregarded. Signe argues, on the other hand, that Massachusetts law applies. ECF No. 31 at 3.

"A federal court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Wisconsin's choice of law statute governing transfers at death dictates that the state law selected by the transferor controls the meaning and effect of an insurance policy. Wis. Stat. § 854.10. Here, however, there is no evidence that Stephan, the transferor, selected the state law that was to control his beneficiary designation. I therefore turn to Wisconsin's general rule governing choice of law in contract cases. "In contractual disputes, Wisconsin courts apply the 'grouping of contacts' rule, that is, that contract rights must be 'determined by the law of the [jurisdiction] with which the contract has its most significant relationship.'" *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561, 641 N.W.2d 662 (footnotes omitted). Based on the record before me, I conclude that the state with the most significant relationship to the contract is Massachusetts.

5

The insurance policy at issue in this case was issued by a Wisconsin insurer to Stephan when he was a resident of Massachusetts in 1984. ECF No. 10-2 at 3. Stephan signed the application in Massachusetts and continued to reside there at least until his divorce became final in 1998. *Id.* at 8, 13; ECF No. 25 at 6. Stephan and Signe were divorced in Massachusetts and the Separation Agreement they signed which was intended to govern the beneficiary designations of the policy expressly states: "This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts." ECF No. 25 at 18. Although the Report of Death issued by the U.S. State Department lists Stephan's U.S. residence as Clermont, Florida, he died in China, where his current wife, who has waived any claim to the proceeds of the policy, lives. ECF No. 18-1. Given these facts, I conclude that Massachusetts is the state with which the contract—the life insurance policy issued by Thrivent—has its most significant relationship.

For completeness, however, I also note that even if I applied Florida choice of law rules, the result would be the same. Florida applies the law of the state in which the policy of insurance was issued and delivered in determining the construction and legal effect of the terms of the policy and the rights and obligations of the parties thereto. *Reliable Life Ins. Co. v. Trimble*, 502 So. 2d 1303, 1304 (Fla. App. 1987); *see also Sturiano v. Brooks*, 523 So. 2d 1126, 1129–30 (Fla.1988) ("In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement. The parties to this contract did not bargain for Florida or any other state's laws to control. We must presume that the parties did bargain for, or at least expected, New York law to apply."). Because Stephan entered into the insurance contract with Thrivent while he was living in Massachusetts and maintained the beneficiary designations required by the Separation

6

Agreement he entered into in Massachusetts, which was incorporated into the final judgment of divorce issued by a Massachusetts court, Florida courts would also apply Massachusetts law to determine the lawful beneficiary.

Massachusetts, like Florida, has a statute that provides that a divorce revokes a prior designation of the insured's ex-spouse as a beneficiary of a policy of life insurance, but the language is not the same. The Massachusetts statute states: "Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage . . . revokes any revocable (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument . . . ." Mass. Gen. Laws ch. 190B, § 2-804(b)(1). The term "governing instrument" as defined by the statute includes life insurance policies. § 2-804(a)(4).

Here, the Separation Agreement, which was merged with and incorporated into the judgment of divorce, explicitly required Stephan to maintain life insurance in the amount of at least $184,000 naming Signe as the beneficiary. As a result, Stephan's designation of Signe as beneficiary was not statutorily revoked by their divorce in 1998. The case falls within the exception to the general rule that a judgment of divorce revokes a prior designation of the decedent's spouse as the beneficiary of his life insurance policy. Erik argues, however, that Stephan's obligation to continue Signe as the beneficiary terminated before his death and thus the statutory revocation occurred later. But nothing in the statute suggests that it operates over time. The statute appears to revoke the designation at the time of the divorce or not at all. Since the divorce did not revoke the designation of Signe as

7

beneficiary, and Stephan did not do so himself after the divorce was entered, Signe is entitled to the proceeds.

Even if I were to consider the events that occurred after the divorce, I would reach the same conclusion. It is true that Erik and Kurt were the intended beneficiaries of $84,000 of life insurance at the time the Separation Agreement was entered and that Signe was to be named as beneficiary "as trustee for the benefit of the children." ECF No. 25 at 4. Erik contends that since he and his brother were the intended beneficiaries of at least $84,000 of life insurance, at least that amount of the proceeds, with a proportionate share of the interest, should go to them. But that condition was to continue only until the youngest child attained age 23. Because Erik and Kurt had both attained the age of 23, the requirement that Stephan "maintain insurance on his life in the amount of Eighty-Four Thousand ($84,000) Dollars, naming the Wife as trustee for the benefit of the children" no longer existed. Indeed, nothing in the Separation Agreement suggests that Stephan had any obligation to maintain life insurance for his children at all once they turned 23. Moreover, according to Kurt, it appears that Stephan made other arrangements for his sons. ECF No. 31 at 4. Thus, the fact that the Separation Agreement required Stephan to maintain $84,000 of life insurance for the benefit of his children until they attained age 23 is of no relevance today.

The other provision of the Separation Agreement relating to life insurance required that Stephan maintain at least $100,000 of insurance on his life naming Signe as the beneficiary for so long as he had any obligation under the Agreement to pay her alimony. The obligation to pay alimony continued until Signe remarried, died, or attained "the age of eligibility for the Solutia SIP and pension plans, whichever shall occur first." ECF No. 25 at 3. Signe, of course, is still alive and has not remarried. Erik argues, however, that she attained the age of eligibility for the Solutia SIP

and pension plans upon entry of the Qualified Domestic Relations Order (QDRO) awarding her a share of the plans shortly after the divorce. The protection that the life insurance was to provide Signe in the event of Stephan's early death, Erik argues, "was phased out when Signe Warpness collected her portion of the Solutia SIP and pension plans, even though Mr. Batchelder continued to make payments." ECF No. 24 at 6. But even if she had not collected her share of the retirement plans immediately after the divorce, Erik argues that she would have attained the age of eligibility no later than when she reached 59½, the age at which a participant's before-tax contributions could generally first be withdrawn without penalty. ECF No. 25 at 60. In either event, by the time of his death, Stephan had no obligation to pay alimony.

Erik's argument reveals the fatal ambiguity in the language used in the Separation Agreement to indicate when Stephan's obligation to pay alimony terminated. It is obvious that the parties did not intend Stephan's obligation to pay alimony to terminate when Signe became eligible to collect her share of the retirement plans that were awarded to her. That apparently occurred immediately upon divorce. If that was the intent, Stephan's obligation to pay alimony would have been illusory. Yet, Erik argues that Stephan's obligation to pay maintenance was phased out by that time based on the language of the Agreement which states the obligation terminates upon Signe "attaining the age of eligibility for the Solutia SIP and pension plans." *Id.* at 8. Attaining the age of eligibility for the plans must mean something different than cashing them out.

Erik's alternative construction—the age at which a participant would be able to withdraw pre-tax contributions without penalty—is also unpersuasive. Nothing in the Separation Agreement suggests that either party knew when Signe would become eligible for benefits under either plan. Erik's argument relies on the language from only one of the plans that was partially awarded to

9

Signe, the Solutia SIP. More importantly, it treats the earliest age at which a plan participant could elect to withdraw money from the account as the age at which Signe would have been eligible, even if she would not have received any benefits under the plans at that age. Attaining the earliest age at which money can be withdrawn does not make one automatically eligible, however. In order to become eligible at age 59½, a participant must elect to receive benefits at that age. Absent such an election, payment of benefits begins at "retirement, disability, death or termination of employment." *Id.* at 60.

Given the uncertainty and ambiguity of the language, a more reasonable interpretation of the Agreement would be that Stephan's obligation to pay alimony would have ceased when Signe retired, not when a participant might have been able to withdraw pre-tax contributions. Indeed, this is apparently the construction Stephan placed upon the provision, since he continued to pay the alimony called for by the Agreement up until the time of his death. When a provision of a contract is ambiguous, the construction placed upon it by the parties is entitled to great weight. *See R. H. Stearns Co. v. Anderson*, 304 Mass. 138, 145, 23 N.E.2d 114, 118 (1939) ("The law is well established that such practical construction by the parties of an ambiguous instrument is entitled to great weight and will usually be adopted by the court."). For this reason as well, I conclude that Stephan's obligation to pay alimony had not terminated and thus, even if post-divorce events could revoke his designation of Signe as beneficiary, no such event occurred in this case. Stephan named Signe as the beneficiary under the Thrivent policy, and she remained so at the time of his death. She is therefore entitled to the benefits deposited with the court.

10

**CONCLUSION**

For the reasons given above, Erik Batchelder's motion for summary judgment (ECF No. 22) is **DENIED** and Kurt Batchelder and Signe Warpness' motions for summary judgment (ECF Nos. 31, 34) are **GRANTED**. The Clerk is directed to enter judgment declaring that Signe Warpness is the beneficiary of the Thrivent policy and is entitled to all proceeds payable thereunder, together with interest. The Clerk is further directed to pay to Signe the proceeds previously deposited with the Court together with accrued interest after thirty days from the date of judgment if no notice of appeal is filed by that time, or earlier upon a statement by Erik that he does not intend to appeal. In the event of an appeal, the Clerk shall withhold payment until further order of the Court.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of July, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court